AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>RYAN INGRAM,<br>VICKY HYOUN JOO LEE, | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>19MJ03420 |

Complaint for violation of Title 18, United States Code, Section 1708 (possession of stolen mail)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE ROZELLA A. OLIVER | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|
| DATE OF OFFENSE<br>August 6, 2019 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |

FILED
CLERK, U.S. DISTRICT COURT
AUG 19 2019
CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 1708]

On or about August 6, 2019, in Los Angeles County, within the Central District of California, defendants RYAN INGRAM and VICKY HYOUN JOO LEE knowingly possessed stolen mail, in violation of Title 18, United States Code, Section 1708.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**KYLE WEEKS** /s/<br>OFFICIAL TITLE<br>Postal Inspector – United States Postal Inspection Service |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)]<br>ROZELLA A. OLIVER | DATE<br>August 15, 2019 |
|---|---|

[(1)] See Federal Rules of Criminal Procedure 3 and 54

AUSA Marina A. Torres x8231    REC: Detention

## AFFIDAVIT

I, Kyle Weeks, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Ryan Ingram ("INGRAM") and Vicky Hyoun Joo Lee ("LEE") for a violation of Title 18, United States Code, Section 1708 (Possession of Stolen Mail).

2. This affidavit is also made in support of an application for a warrant to search one digital device (the "SUBJECT DEVICE"), in the custody of the Los Angeles Police Department ("LAPD"), in Van Nuys, California, as described more fully in Attachment A.

3. The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 1708 (Mail Theft and Possession of Stolen Mail), 371 (Conspiracy), 1028 (Fraud and Related Activity in Connection with Identification Documents, Authentication Features, and Information), 1029 (Access Device Fraud), 1344 (Bank Fraud), and 1028A (Aggravated Identity Theft) (collectively, the "Subject Offenses"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest

warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF POSTAL INSPECTOR KYLE WEEKS

5.  I am a United States Postal Inspector ("Postal Inspector") employed by the Los Angeles Division of the United States Postal Inspection Service ("USPIS") and have been so employed since April 2019. I am currently assigned to the Los Angeles Division Mail Theft Team, which investigates crimes against the United States Postal Service ("USPS") and crimes related to the misuse and attack of the mail system, including theft of United States mail, possession of stolen mail, fraud, access device fraud (including credit and debit cards), and identity theft. While with the USPIS, I have received both formal and informal training. Through my training and experience, including my discussions with other Postal Inspectors, I have learned about mail theft investigations and common mail theft and identity theft practices. Previously, I was employed for five years with the United States Secret Service ("USSS"), Los Angeles Field Office. During my time with the USSS, I investigated crimes related to identity theft, access device fraud, wire fraud, and bank fraud.

## III. SUMMARY OF PROBABLE CAUSE

6.  On August 6, 2019, the USPS received a report from LAPD about two suspects breaking into a mailbox at a residence

in Studio City, California. A concerned citizen had called the police after observing the suspects breaking into his mailbox and then driving away in a gold Mercedes. The citizen was following the suspects in his own vehicle, from his home to a gas station. At the gas station, he was met with officers from the Los Angeles Police Department ("LAPD") and he directed them to the suspects and their vehicle. LAPD officers identified the driver as Vicky Lee ("LEE") and the passenger as Ryan Ingram ("INGRAM").

7. While being patted down for weapons, INGRAM attempted to destroy two counterfeit temporary California Department of Motor Vehicle ("DMV") interim driver's licenses that were in his right pants pocket. LAPD officers also discovered that LEE had a suspended license and impounded the Mercedes. Pursuant to an inventory search, LAPD found approximately 60 pieces of mail addressed to individuals other than "LEE" or "INGRAM" in the front passenger area of the Mercedes. LAPD officers also found a butane powered blowtorch, two credit cards bearing the names of individuals other than "LEE" or "INGRAM", and the SUBJECT DEVICE.

## IV. STATEMENT OF PROBABLE CAUSE

8. Based on my review of law enforcement reports, conversations with other law enforcement agents, witnesses, and my own knowledge of the investigation, I am aware of the following:

3

### A. D.D. Begins Surveillance of the Suspects He Believes Vandalized His Mail Box

9. On August 6, 2019, at approximately 04:00, D.D. awoke when he heard a door shut in the driveway of his home in Studio City, California. D.D. walked outside and saw an individual walking near his mailbox before entering the passenger side of a gold Mercedes in his driveway. D.D. saw another person in the driver's seat of the Mercedes. He then saw the gold Mercedes do a three-point turn in his driveway and begin to drive away.

10. D.D. walked down his driveway and saw that his mailbox had been opened and vandalized. D.D. got into his own car and began to follow the Mercedes with his car's headlights off. D.D. saw the Mercedes driving very slowly, and it appeared to him that the occupants of the Mercedes were scoping out more homes and mailboxes.

11. D.D. called 911. D.D. continued following the Mercedes to the ARCO gas station at the corner of Whitsett and Ventura. There, D.D. saw a heavy-set Hispanic male get out of the Mercedes and enter the gas station to pay, as a female in a black shirt remained outside of the Mercedes and began to pump gas.

12. D.D. stayed on the phone with the 911 operator and continued directing them to his location. He used the opportunity while the Mercedes was stopped at the well-lit gas station to get a better look at the vehicle and its passengers. D.D. repeated the license plate number (4DEE887) to the 911 operator several times.

4

13. D.D. saw the suspects and the Mercedes leave the gas station, and he continued following them up Sunswept Drive. D.D. saw the Mercedes drive up Vanetta Drive and make a U-turn, now driving in his direction. D.D. turned on the headlights of his own car and passed the Mercedes. The Mercedes pulled over to the side of the road and turned off its own headlights. After passing the Mercedes, D.D. made a three point turn and drove past the now-parked Mercedes. D.D. could hear police sirens approaching up Sunswept.

**B.   LAPD Stops the Mercedes, Detains Suspects**

14. LAPD Officers Simon and Juarez were the first officers on scene and met with D.D. D.D. explained that the suspects were just up the street in the Mercedes. Officer Simon requested D.D. stand by while they made contact with the suspects.

15. D.D. stated to me that he never lost sight of the Mercedes.

16. Officer Simon and Juarez stopped the Mercedes. LEE was in the driver's seat and INGRAM was in the passenger seat. Both were taken into custody pending a mail theft investigation. Additional LAPD units arrived to assist Officers Simon and Juarez.

17. During a pat-down of INGRAM, Officer Fiallos saw INGRAM reach into his right pocket, pull out some paperwork, and begin to crumple the paperwork in an attempt to destroy it. Officer Fiallos recovered the paperwork and discovered that they were three California DMV temporary driver licenses. One of the

5

documents had Ingram's photo, name, and valid identification. The other two documents were counterfeit; they had INGRAM's photo but the names and identification numbers of different individuals.

18. LAPD officers also discovered the LEE was driving on a suspended license, in violation of California Vehicle Code Section 14601.1(a).

19. LAPD Officers Simon and Juarez impounded the vehicle and during their inventory search recovered the following:

   a. Approximately 60 pieces of USPS mail, recovered from the front passenger floorboard of the Mercedes;

   b. One Slate Visa credit card bearing the name "M.P." and ending in 9960, recovered from the front passenger area of the Mercedes;

   c. One Citibank Master card bearing the name "M.P." and ending 2918, recovered from the front passenger area of the Mercedes;

   d. One California BlueCross BlueShield health insurance card in the name of "V.P.", recovered from the front passenger area of the Mercedes;

   e. The SUBJECT DEVICE, recovered from the front passenger area of the Mercedes;

   f. And one Burnzomatic/Coleman propane powered blowtorch, recovered from the front passenger area of the Mercedes. Based on my training and experience, blowtorches are often used by mail thieves to break into mailboxes.

20. INGRAM was arrested by LAPD and charged with a violation of California Penal Code section 530.5(c)(2) (Identity Theft with Prior Convictions). LEE was arrested and charged with a violation of California Penal Code section 530.5(e) (Mail Theft).

21. While at the North Hollywood LAPD station, Officer Simon looked up the California identification numbers on the two counterfeit interim driver's license documents. The first identification number belonged to an individual who was deceased, and the second identification number belonged to a female.

### C. D.D. Mailbox had Scorch Marks

22. On August 6, 2019, D.D. emailed me pictures of his damaged mailbox. I reviewed the photos and observed that D.D.'s mailbox was damaged and could not be closed. The lock to Mr. Dsouza's mailbox was missing and the area was severely scorched and/or burned. The scorch marks surrounding the missing lock area are consistent with the propane torch found in the Mercedes at the time of INGRAM and LEE's arrest by LAPD.

### D. The Mercedes is Registered to LEE

23. On or about August 9, 2019, I obtained vehicle registration information for the Mercedes using the license plate number 4DEE887. The report stated the vehicle had a valid registration from December 28, 2014 to December 28, 2015, and that the vehicle was registered to LEE at an address in Pacoima, California. This address matches the address on LEE's California driver's license.

### E. Mail Matter From the Mercedes

24. On or about August 9, 2019, I reviewed the mail matter recovered from the Mercedes. I counted approximately 60 pieces of United States Postal Service mail addressed to people other than LEE or INGRAM. During my review, I noticed that most of the mail was from the area near D.D.'s home and some of it was from the same street that he lives on.

### V. TRAINING AND EXPERIENCE REGARDING MAIL AND IDENTITY THEFT

25. Based on my training and experience and information obtained from other law enforcement officers who investigate mail and identity theft, I know the following:

    a. People who steal mail are often involved in fraud and identity theft crimes. These individuals usually steal mail looking for checks, access devices, other personal identifying information (such as names, Social Security numbers, and dates of birth), and identification documents that they can use to fraudulently obtain money and items of value. Mail thieves often retain these items of value from stolen mail in order to make fraudulent purchases or sell the items to others in exchange for cash or drugs.

    b. It is common practice for individuals involved in mail theft, identity theft, bank fraud, and access device fraud crimes to possess and use multiple digital devices at once. Such digital devices are often used to facilitate, conduct, and track fraudulent transactions and identity theft. Suspects often use digital devices to perpetrate their crimes due to the relative anonymity gained by conducting financial transactions

electronically or over the internet. They often employ digital devices for the purposes, among others, of: (1) applying online for fraudulent credit cards; (2) obtaining or storing personal identification information for the purpose of establishing or modifying fraudulent bank accounts and/or credit card accounts; (3) using fraudulently obtained bank accounts and/or credit card accounts to make purchases, sometimes of further personal information; (4) keeping records of their crimes; (5) researching personal information, such as social security numbers and dates of birth, for potential identity theft victims; and (6) verifying the status of stolen access devices.

      c.    Often times mail and identity thieves take pictures of items retrieved from stolen mail or mail matter with their cellphones.

      d.    It is also common for mail and identity thieves to keep "profiles" of victims on digital devices. Such "profiles" contain the personal identifying information of victims, such as names, Social Security numbers, dates of birth, driver's license or state identification numbers, alien registration numbers, passport numbers, and employer or taxpayer identification numbers.

      e.    It is common for mail thieves, identity thieves, and individuals engaged in bank fraud, access device fraud, and identification document fraud to use equipment and software to print credit and identification cards, to create magnetic strips for credit cards, to use embossing machines to create credit cards, to use laser printers to create checks, and to use

9

magnetic card readers to read and re-encode credit cards. Software relevant to such schemes can often be found on digital devices, such as computers and smartphones.

   f. Based on my training and experience, I know that individuals who participate in mail theft, identity theft, bank fraud, and access device fraud schemes often have co-conspirators, and often maintain telephone numbers, email addresses, and other contact information and communications involving their co-conspirators in order to conduct their business.  Oftentimes, they do so on their digital devices. Suspects often use their digital devices to communicate with co-conspirators by phone, text, email, and social media, including sending photos.

## VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

  26. As used herein, the term "digital device" includes the SUBJECT DEVICE.

  27. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

   a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the

Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

   b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

   c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

   d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures

are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

28. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

    a. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

    b. Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

29. Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII. CONCLUSION

30. For all of the reasons described above, there is probable cause to believe that LEE and INGRAM have committed violations of Title 18, United States Code, Section 1708

12

(Possession of Stolen Mail).  There is also probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICE described in Attachment A

                                                Kyle Weeks, Postal Inspector
                                                United States Postal
                                                Inspection Service

Subscribed to and sworn before me
this _____ day of AUGUST, 2019.


_____
UNITED STATES MAGISTRATE JUDGE

13